# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER WADE HAMMOND, : | |
|     Petitioner, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 04-5783 |
| MARILYN BROOKS, : | |
|     Respondent. : | |

## Memorandum

YOHN, J.                                                                                                    May 29, 2009

    Presently before the court is petitioner Christopher Wade Hammond's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Hammond was convicted of first-degree murder, robbery, and theft and was sentenced to consecutive terms of life imprisonment for the murder conviction and ten to twenty years' imprisonment for the robbery conviction.  After conducting a de novo review of the Report and Recommendation of United States Magistrate Judge Timothy R. Rice, and upon consideration of petitioner's objections thereto, the court will overrule petitioner's objections, adopt in substantial part the Report, and approve the Recommendation.

**I.**     **FACTS AND PROCEDURAL BACKGROUND**

    The Pennsylvania Superior Court, in reviewing Hammond's direct appeal, summarized the history of Hammond's arrest and convictions:

> The victim, an employee of Dunkin' Donuts, was killed at the store.  Police investigation into the murder focused on a young black man described by many witnesses as being in and around the Dunkin' Donuts store in the hours surrounding

1

the matter. In the early part of the day, starting at approximately 1:30 p.m., witnesses recalled observing a man fitting this description siting in the store; after 6:00 p.m. that day, customers were waited on by a similarly-described man, who appeared unfamiliar with the workings of the store. Across the street, another witness was at the bus stop at approximately 6:08 p.m. when he was approached by a black man who asked him what time the bus arrived and, upon learning the bus was due, but was usually late, ran across the street to Dunkin' Donuts. Several minutes later, a black man banged on the bus door, got on the bus and remained in the front. At approximately the same time, an ambulance driver observed a black man run from Dunkin' Donuts and frantically try to catch a bus. The bus driver similarly recalled a young black man run from the Dunkin' Donuts, board the bus and stand in the front until the driver let him off in Center City Philadelphia. Register tapes from Dunkin' Donuts showed irregular activity beginning at 5:46 p.m. the evening of the murder.

. . . .

The Montgomery County Grand Jury began an investigation into the murder. The grand jury issued a subpoena ordering [Hammond] to appear. Detectives searched unsuccessfully for [Hammond] before hand-delivering the subpoena to [Hammond's] father at [Hammond's] last known address.

[Hammond] failed to appear before the grand jury on the date specified in the subpoena. As a result, a bench warrant was issued for [Hammond]. This information was entered into the National Crime Information Computer ("NCIC").

. . . .

Approximately two months later, [Hammond] was arrested in Ohio on unrelated theft and drug charges. Before they released [Hammond], the Ohio police notified Montgomery County authorities that [Hammond] was in custody, and would be detained on the basis of the NCIC notices. Montgomery County detectives went to Ohio and met with [Hammond]. After being advised of his *Miranda* rights, [Hammond] waived those rights and gave an incriminating statement in which he explained the events of the day of the murder. . . . [Hammond] subsequently appeared for an extradition hearing, represented by counsel, at which he waived extradition and agree[d] to return to Pennsylvania. The Montgomery County detectives accompanied [Hammond] back to Pennsylvania. During the return trip [Hammond] made additional incriminating statements.

*Commonwealth v. Hammond*, 764 A.2d 1123 (Pa. Super. Ct. 2000) (unpublished table decision).

On February 9, 1999, a jury convicted Hammond of first-degree murder, robbery and theft. The jury could not agree on a sentence, so on February 11, 1999, the trial judge sentenced Hammond to life imprisonment for the first-degree murder charge and ten to twenty years' imprisonment for the robbery charge. The terms of imprisonment were to run consecutively.

Hammond filed a timely notice of appeal in the Superior Court of Pennsylvania on October 22, 1999. In his direct appeal, Hammond raised three claims:

(1) [W]hether the trial court improperly refused to suppress [Hammond's] inculpatory statements;

(2) [W]hether the verdict was against the weight of the evidence; and

(3) [W]hether the trial court improperly refused to instruct the jury on [Hammond's] voluntary intoxication or drugged condition.

*Id.* On August 28, 2000, the Pennsylvania Superior Court affirmed the judgment of sentence. Hammond then filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which the Pennsylvania Supreme Court denied on June 4, 2001.

On May 29, 2002, Hammond filed a Pennsylvania Post Conviction Relief Act ("PCRA") petition pursuant to 42 Pa. Con. Stat. §§ 9451 *et seq.* Hammond later filed an amended PCRA petition, in which he raised three grounds for relief in an effort to make out a layered ineffective assistance of counsel claim:

(1) During the early stages of this case, [Hammond's initial counsel] failed to file a Motion to Quash Subpoena before the issuing judge on January 26, 1998. This failure to file an appropriate Motion to Quash led to the admission of statements made by [Hammond] in Ohio in January of 1998 that would not have been [admitted into evidence] but for counsel's failure to effectively represent [Hammond.] Additionally, [counsel] failed to meet with [Hammond] prior to appearing on [Hammond's] behalf before the Honorable Judge Subers, the supervising judge of the Montgomery County Grand Jury at the time. [Counsel] also initiated plea bargain negotiations without the consent of his client[. The plea negotiations] were contrary to [Hammond's] wishes.

(2) Trial counsel . . . was ineffective in his representation of [Hammond] during the actual trial phase of these proceedings to the extent that [Hammond] did not receive a fair trial in contradiction to his constitutional rights. Specifically, [trial counsel] failed to challenge the voluntariness of [Hammond's] statements at any phase of the proceedings, but specifically

3

      during the two-day suppression hearing in May of 1998. [Trial counsel] also failed to notify [Hammond] of his right to testify at the suppression hearing and no colloquy was performed at this hearing that allowed [Hammond] to know his rights. Additionally, [trial counsel] failed to challenge or argue against the contradictory testimony given by a commonwealth witness as to the chronology of events that occurred on the day of the murder and failed to have independent DNA analysis performed on blood and hair samples found at the scene of the crime. Finally, [trial counsel] failed to adequately argue the alibi defense that was implicit from the facts of this case or to request that the Trial Court give an alibi defense instruction.

(3)     [Appellate Counsel] failed to submit an adequate appeal on [Hammond's] behalf in that she failed to raise prior counsel's ineffectiveness, failed to raise the issue of the alibi defense, failed to challenge rulings made by the Trial Court in regard to unavailable witnesses and failed to notify [Hammond] of his appellate rights.

(Resp't's Answer Pet'r's Pet. Writ Habeas Corpus, Ex. E, Pet'r's PCRA Pet. at 5-7.)

      After appointing counsel and holding a hearing, the PCRA court denied Hammond's motion on March 17, 2003. Hammond appealed this dismissal to the Superior Court, raising five issues for review:

(1)     The Trial Court erred by failing to find that [Hammond's] first attorney . . . was constitutionally ineffective when [he] failed to file, or to otherwise present to the Court of Common Pleas, a Motion to Quash the bench warrant that had been issued . . . in November of 1997 for failure to appear before the Montgomery County Grand Jury. The Superior Court of Pennsylvania later found that service of this bench warrant was improper under the appropriate rules for service in [Pennsylvania].

(2)     The Trial Court erred by failing to find that [Hammond's] trial counsel . . . was constitutionally ineffective when he failed to request a continuance during trial in this matter so that the testimony of a crucial witness could have been obtained. The testimony of this witness was critical to the defense theory of the case that [Hammond] was the victim of mistaken identity.

(3)     The Trial Court erred by failing to find that [Hammond's] trial counsel . . . was constitutionally ineffective for failure to effectively argue the defense theory of mistaken identity when the witness's statements and testimony in this case clearly demonstrated that [Hammond] could not have been in two

    locations at the same time.  Trial Counsel failed to use demonstrative evidence to show the jury these inconsistencies as to time or to have an independent DNA analysis performed on hair and blood samples found at the scene of the crime.

(4) The Trial Court erred by failing to find that [Hammond's] first appellate counsel . . . was constitutionally ineffective for failing to argue that [Hammond's first attorney] . . . was constitutionally ineffective in his representation of [Hammond].

(5) The Trial Court erred in failing to find that the layered ineffectiveness of three different attorneys has caused the truth-determining process to be undermined to such an extent that no reliable adjudication of guilt could have taken place and has further erred by denying [Hammond's] Petition for Relief under the Post-[C]onviction Relief Act.

(*Id.* Ex. H, Pet'r's PCRA Appeal Pet. at 1-2.)  The Superior Court affirmed the dismissal of Hammond's PCRA petition on January 6, 2004.  On February 4, 2004, Hammond filed a petition for allowance of appeal to the Pennsylvania Supreme Court.  The Pennsylvania Supreme Court denied Hammond's petition on November 4, 2004.

  On December 14, 2004, Hammond filed the instant habeas petition pursuant to 28 U.S.C. § 2254, asserting the following four claims:

(1) Conviction [was] obtained by use of coerced confession;

(2) Conviction [was] obtained by use of evidence obtained pursuant to an unlawful arrest;

(3) Denial of effective assistance of counsel [stemming from the subpoena served on Hammond's father]; and

(4) Conviction [was] obtained by use of evidence obtained pursuant to unlawful arrest.[1]

(Pet'r's Pet. Writ Habeas Corpus at 9-10.)  On July 13, 2005, Magistrate Judge Timothy R. Rice

---

[1] Hammond's fourth claim states the same ground for relief as does his second claim. Hammond supports his fourth claim with the same reasoning he used to support his third claim.

issued a Report and Recommendation that the district court dismiss all four of Hammond's claims. Hammond filed objections to the magistrate judge's report on July 28, 2005. Respondents did not file a reply to Hammond's objections. This case was reassigned to my docket on April 28, 2009.

## II.     STANDARD OF REVIEW

Where a habeas petition has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After completing such review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Magistrate Judge Rice found that Hammond's habeas petition should be dismissed for the following reasons. First, Hammond's first, second and fourth claims all raised Fourth Amendment issues. Because Hammond was afforded a full opportunity to raise these claims in state court, all three claims failed under the doctrine announced in *Stone v. Powell*, 428 U.S. 465 (1976). Second, Judge Rice found that Hammond's argument concerning the propriety of the service of the subpoena was without merit. Because the underlying claim lacked merit, Judge Rice concluded under *Strickland v. Washington*, 466 U.S. 668 (1984) and *Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000) that the Superior Court was not unreasonable in determining that Hammond's Sixth Amendment right to effective counsel was not violated.

Hammond raised two objections to the Report and Recommendation. First, he continued to argue that the facts of the case demonstrate that counsel was constitutionally deficient because counsel failed to challenge the grand jury subpoena and bench warrant. Second, Hammond

6

clarified that he does not challenge the effectiveness of his appellate counsel's representation. Instead, he challenges the Superior Court's application of the Pennsylvania Rules of Civil Procedure rather than an applicable criminal statute when the court determined whether service of the subpoena was proper. In addition to his objections, Hammond raised three new grounds for relief: (1) counsel failed to request the continuance that would have allowed a defense witness to return to the county to testify; (2) counsel failed to call an expert witness concerning forensic testimony; and (3) counsel failed to follow the defense strategy that counsel conveyed to petitioner in a letter that petitioner and counsel both signed.

The court addresses these issues de novo.

## III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241 *et seq.*, governs the court's review of this habeas petition. Under AEDPA, a "district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a). Habeas relief is unwarranted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). Prior to reaching these substantive issues, however, the court must first determine whether Hammond's claims are properly before the court. *See Kindler v. Horn*, 542 F.3d 70, 78 (3d Cir. 2008).

### A.      AEDPA's Procedural Requirements

#### 1.      Timeliness [2]

AEDPA imposes a one-year statute of limitations on habeas petitioners.  *See* § 2244(d)(1)  Section 2244(d)(1) provides that the one year statute of limitations will run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Only § 2244(d)(1)(A) applies to Hammond's petition.  Thus, to satisfy AEDPA's timeliness requirement in this instance, Hammond must have filed his habeas petition within one year of the date on which his state conviction became final.  Hammond's state court conviction became final on September 2, 2001, ninety days after the Pennsylvania Supreme Court affirmed Hammond's judgment of sentence, because Hammond could have, but did not, petition for certiorari with the United States Supreme Court.  *See* S. Ct. R. 13(1); *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999) (reminding that Pennsylvania Supreme Court's decision becomes final after ninety day period in which a petitioner can seek a writ of certiorari expires); *cf. Clay v. United States*, 537 U.S. 522, 527 (2003) (holding the same for § 2255).  Importantly, the one-year statute of limitations is statutorily tolled during the time in "which a properly filed application for State

---

[2] Though respondent does not raise the issue of timeliness in its brief, the court may raise the issue *sua sponte*.  *See Day v. McDonough*, 547 U.S. 198, 209 (2006) (holding that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition").

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2). Because of his state court filings, less than one year elapsed between the date on which Hammond's conviction became final and the date on which Hammond filed his habeas petition.[3] Thus, the claims raised in Hammond's original habeas petition are timely.

Conversely, the three claims raised for the first time by Hammond in his objections to the Report and Recommendation on July 28, 2005 are not timely, as these claims were raised more than one year after Hammond's conviction became final. Moreover, Hammond does not argue, and the record does not suggest, let alone demonstrate, that equitable tolling applies.[4] Therefore, the court is barred from reviewing the three new claims that Hammond raised in his objections to

---

[3] Hammond filed his PCRA petition on May 29, 2002, 269 days after his conviction became final. Hammond's PCRA proceedings were pending until the Pennsylvania Supreme Court denied Hammond's petition for allowance of appeal on November 4, 2004. Hammond filed his habeas petition on December 14, 2004, 40 days after the Pennsylvania Supreme Court denied Hammond's petition.
    Taking into consideration Hammond's properly filed state court post-conviction proceedings, Hammond's habeas petition was filed 309 days after his conviction became final. Therefore, Hammond filed his habeas petition within AEDPA's one-year statute of limitations.

[4] The Third Circuit has set forth "two general requirements for equitable tolling: (1) that 'the petitioner has in some extraordinary way been prevented from asserting his or her rights;' and (2) that the petitioner has shown that 'he or she exercised reasonable diligence in investigating and bringing [the] claims.'" *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003) (quoting *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)). The Third Circuit has found equitable tolling appropriate: (1) if the respondent has actively misled the petitioner; (2) if the petitioner has in some extraordinary way been prevented from asserting his rights; (3) if the petitioner has timely asserted his rights mistakenly in the wrong forum, *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999); or (4) if the court has misled the petitioner regarding the steps the petitioner needs to take to preserve a claim, *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005). None of these situations applies to Hammond's newly raised claims. More generally, Hammond has not satisfied the two requirements for equitable tolling. Therefore, equitable tolling is inapplicable and Hammond's new claims are time barred.

Judge Rice's Report and Recommendation.[5]

### 2.     Exhaustion and Default

Habeas courts can not grant habeas corpus relief under § 2254 "unless the petitioner has 'exhausted the remedies available in the courts of the State.'" *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (quoting 28 U.S.C. § 2254(b)(1)(A)). The requirement of exhaustion is "grounded in principles of comity . . . [giving] States . . . the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To fairly raise his claims, "a petitioner must 'present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting *McCandless v. Vaughan*, 172 F.3d 255, 261 (3d Cir. 1999)). Importantly, in Pennsylvania, a petitioner need not seek review with the Pennsylvania Supreme Court to properly exhaust. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004). Thus, to satisfy § 2254(b)(1)(A), a petitioner must present his claims to the Pennsylvania Superior Court. *See Williams v. Folio*, No. 07-1099, 2008 WL 336306, *3 (E.D. Pa. Feb. 4, 2008) (stating that "a habeas petitioner successfully exhausts a claim by bringing it to the Superior Court either on direct appeal or during PCRA proceedings").

Hammond raised claims two, three and four in state court proceedings before the Pennsylvania Superior Court. However, Hammond's first claim—that his conviction is based on

---

[5] In addition to timeliness, it is generally accepted that a habeas court can refuse to hear claims that were not raised before the magistrate judge. *See Kirk v. Meyer*, 279 F. Supp. 2d 617, 619 (E.D. Pa. 2003) ("Although the Third Circuit has remained silent on the precise issue, the vast majority of authority holds that a district court may properly refuse to hear claims not first presented to the assigned Magistrate Judge." (citing cases)).

10

a coerced confession—was not raised in state court.[6]  Therefore, Hammond has not exhausted his state court remedies for his first claim.  If a petitioner's claims are unexhausted and the time for doing so has yet to pass, a petitioner should return to state court to exhaust the claims.  If the time to exhaust such claims has passed, the unexhausted claims are procedurally defaulted because state procedural rules will bar petitioner from raising the unexhausted claims.  *See Coleman*, 501 U.S. at 735 n.1 (reasoning that when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas").  Here, because more than one year has elapsed since the date on which Hammond's conviction became final, Hammond can no longer seek redress for the alleged constitutional deprivation in state court.  *See* 42 Pa. Con. Stat. § 9545(b)(1) (requiring petitioners to file all PCRA petitions "within one year of the date the judgment becomes final").  Therefore, Hammond's first claim is subject to procedural default.

---

[6] Hammond did challenge the admission of his statements on Fourth Amendment grounds in his direct appeal.  Specifically, the Superior Court stated: "[Hammond] first claims that the trial court erred in refusing to suppress his incriminating statements because they were obtained while [Hammond] was improperly detained." *Commonwealth v. Hammond*, 764 A.2d 1123, slip op. at 5 (Pa. Super. Ct. 2000) (unpublished table decision).  Unlike his claim on direct appeal, in his habeas petition, Hammond claims that his "conviction [was] obtained by use of [a] coerced confession." (Pet'r's Pet. Writ Habeas Corpus at 9.)  To support this claim, Hammond argues that "[t]he Court admitted a coerced statement into evidence, which was the main evidence connecting petitioner to the crime . . . ."  Though Hammond does not further elucidate the nature of his claim (i.e., whether he relies on *Miranda* or due process or both), his claim is distinct from the one he raised on direct appeal as it relies on a different constitutional protection.  That Hammond challenged the admission of his confession in state court on Fourth Amendment grounds does not serve to exhaust his present Fifth and/or Fourteenth Amendment claims.  Although both claims relate to Hammond's confession, the claims are separate and distinct constitutional challenges that a petitioner must independently exhaust in state court.

Hammond can overcome this default if he demonstrates cause and prejudice, *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000), or a miscarriage of justice, *Cristin v. Brennan*, 281 F.3d 404, 420-21 (3d Cir. 2002) (reminding that the "miscarriage of justice inquiry is . . . concerned with 'actual innocence'" (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992))). Hammond has not asserted, let alone demonstrated, cause and prejudice for his default. Moreover, Hammond does not argue and the record does not suggest that the failure to consider his first claim would constitute a miscarriage of justice. Therefore, Hammond can not overcome his procedural default, and I will dismiss his first claim accordingly.

**B.     Claims 2 and 4**

In claims two and four, Hammond asserts that his convictions are premised on evidence obtained during an unconstitutional arrest. Hammond argues that he was improperly detained in Ohio because the bench warrant issued for his arrest was premised on Hammond's failure to comply with an improperly served subpoena. According to Hammond, because the subpoena was improperly served, the bench warrant was unlawful as was his resultant detention in Ohio, and all statements obtained during the detention violate his Fourth Amendment rights. Hammond contends that because his conviction is premised on Fourth Amendment violations, he is entitled to habeas relief.[7]

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

---

[7] Additionally, in his fourth claim, Hammond takes issue with the Superior Court's application of state law during his PCRA appeal. As I will explain below, habeas review is not the proper venue for this claim.

12

granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976) (footnote omitted). More specifically, if a petitioner is given a full and fair opportunity to raise and litigate Fourth Amendment issues at trial or on direct appeal, then "[u]nder *Stone v. Powell*, a federal court may not reexamine the state court's determination that no Fourth Amendment violation occurred, that a violation had occurred but that introduction of its fruits was harmless, or that any Fourth Amendment violation that might have occurred had harmless results." *See Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986). Therefore, while federal courts do exercise jurisdiction over Hammond's Fourth Amendment claims, federal courts "are—for prudential reasons—restricted in their application of the exclusionary rule." *Marshall v. Hendricks*, 307 F.3d 36, 81 (3d Cir. 2002).

The question for habeas review, therefore, is whether Hammond had the opportunity to fully and fairly litigate his Fourth Amendment claims at trial or on direct review. Hammond does not argue that he was denied such an opportunity, and a review of the record clearly demonstrates that Hammond fully litigated these issues in a pre-trial suppression hearing and in his direct appeal. Hammond is "at most alleging that the Fourth Amendment claims were decided incorrectly or incompletely . . . allegations that are insufficient to surmount the *Stone* bar." *Id.* at 82. Therefore, because I find that Hammond had a full and fair opportunity to raise his Fourth Amendment claims in state court, *Stone v. Powell* precludes habeas relief. I will deny Hammond's second and fourth claims accordingly.

    C.    Claim 3

In his third claim, Hammond actually raises two distinct grounds for relief. First,

Hammond asserts (without explanation) that he was denied effective assistance of counsel. Hammond explains this claim in his objections to the Report and Recommendation, arguing that counsel was ineffective for failing to challenge propriety of the grand jury subpoena. Second, Hammond argues that the Superior Court violated his due process rights when it applied Pennsylvania Rules of Civil Procedure in determining whether service of the grand jury subpoena was proper.

### 1. Ineffective Assistance of Counsel

To establish constitutionally ineffective assistance of counsel, a petitioner must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). To prove prejudice, "a petitioner must demonstrate that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008) (quoting *Strickland*, 466 U.S. at 694). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Reasonable probability means "a probability 'sufficient to undermine confidence in the outcome.'" *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (quoting *Hull v. Kyler*, 190 F.3d 88, 110 (3d Cir. 1999)). As the *Strickland* standard is a clearly established federal law, *Taylor v.*

*Horn*, 504 F.3d 416, 430 (3d Cir. 2007), *cert. denied*, 129 S. Ct. 92 (2008), the question for a habeas court is whether the state court's review of a petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of, the *Strickland* standard, *Siehl v. Grace*, 561 F.3d 189, 196 (3d Cir. 2009).

When the Superior Court initially addressed Hammond's ineffective assistance of counsel claim on direct appeal, the Superior Court found that service of the grand jury subpoena was improper, and that the subpoena would have been quashed if Hammond challenged its validity. However, because Hammond failed to challenge the subpoena, Hammond waived his Sixth Amendment claim.  When the Superior Court addressed the same issue in Hammond's PCRA appeal, the Superior Court amended its previous reasoning and held that service of the subpoena was proper.  The Superior Court further held that because service was proper, the underlying claim to Hammond's ineffective assistance of counsel claim lacked merit.  The Superior Court relied on the plain language of 42 Pa. Con. Stat. § 5904(a) to reach this conclusion.  Section 5904(a), which governs service of subpoenas in criminal matters, states:

> **(a) Method of service**.—In addition to *any other method of service provided by law*, a subpoena may be served upon a witness in a criminal proceeding by registered or certified mail, return receipt requested, or by first class mail.

(emphasis added).  Because of the phrase "any other method of service provided by law," the Superior Court held that § 5904(a) permits service pursuant to the Pennsylvania Rules of Civil Procedure.  Having decided that § 5904 permitted use of civil rules of service, the Superior Court found that, pursuant to Pennsylvania Rules of Civil Procedure 234.2 and 402, service may be perfected by (1) "handing a copy to the defendant" or (2) "handing a copy . . . at the residence of the defendant to an adult member of the family with whom he resides . . . ." Pa. R. Civ. Pro.

402(a)(2)(i). The Superior Court held that the subpoena was properly served because Hammond's father was served at Hammond's last known address. Because service was proper, the claims underlying Hammond's ineffective assistance of counsel claim lacked merit. Accordingly, the Superior Court denied Hammond's ineffective assistance of counsel claim.

Upon review of the Superior Court's decision, I find that because Hammond's underlying claim regarding service of the subpoena is meritless, Hammond fails to establish either of the *Strickland* prongs. Here, as the Superior Court noted, Hammond's father was served at Hammond's last known address. Thus, service was proper under Rules 234.2(b)(1) and 402, and, consequently, under § 5904(a). Because service was proper, the underlying claim that forms the basis of Hammond's ineffective assistance of counsel claim lacks merit. Therefore, Hammond's counsel's actions did not fall "below an objective standard of reasonableness . . . ." *Buehl*, 166 F.3d at 169 (citing *Strickland*, 466 U.S. at 688), and Hammond has not suffered prejudice, as the trial court would have denied any motion to quash that Hammond alleges his attorney should have filed, *cf. Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987) (finding that petitioner not prejudiced where appellate counsel failed to raise meritless claim on appeal). Under *Strickland*, there simply "can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Under § 2254(d)(1), Hammond has not demonstrated that the Superior Court's decision was either contrary to, or an unreasonable application of, *Strickland*. Accordingly, I will deny Hammond's ineffective assistance of counsel claim.

### 2. Denial of Due Process

Hammond contends that the Superior Court in his PCRA proceeding improperly relied on

the Pennsylvania Rules of Civil Procedure in determining that service of the subpoena was proper. However, "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998); *see also Mason v. Meyers*, 208 F.3d 414, 417 (3d Cir. 2000) (rejecting claim of due process violation in collateral proceeding as basis for habeas claim). Therefore, because Hammond attacks the decision of the Superior Court in its review of his collateral attack rather than the events taking place during his trial, Hammond's claim does not provide a basis for habeas relief.

Notwithstanding this rule, it is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). As I discussed above, Hammond has not demonstrated that the Superior Court's ruling on the service issue was constitutionally defective or even erroneous. Therefore, I will deny Hammond's third claim to the extent it raises a due process claim.

### IV. CONCLUSION

In conclusion, I find that Hammond's first claim is unexhausted. Hammond's second and fourth claims each invoke the Fourth Amendment as the basis for habeas relief. Because Hammond had a full and fair opportunity to raise these claims at trial and on direct review, the *Stone v. Powell* doctrine precludes habeas relief on Fourth Amendment grounds, I will deny claims two and four accordingly. I will also deny claim three to the extent that Hammond raises an ineffective assistance of counsel claim because Hammond has not satisfied the two-prong *Strickland* standard. Finally, I will dismiss claim three to the extent that Hammond raises a due

process claim attacking collateral proceedings or stemming from the Superior Court's application of state law, as such claims do not form a basis for habeas relief.

Lastly, I must determine if I should issue a certificate of appealability. A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). According to the Supreme Court,

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Reasonable jurists could not disagree about petitioner's procedural default and his failure to show either cause and prejudice or a miscarriage of justice. Therefore, the court will not issue a certificate of appealability with respect to Hammond's first claim.

Additionally, on the basis of the record before the court, petitioner's remaining claims (claims 2-4) are without merit. The court is persuaded that reasonable jurists would not find this assessment debatable or wrong. Therefore, petitioner has failed to make a substantial showing of

the denial of a constitutional right, and a certificate of appealability will not issue with respect to Hammond's remaining claims.

    An appropriate order follows.